UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

EUGENE W. SIDNEY,                       :

        Plaintiff,          :       03 Civ. 0830 (HBP)

   -against-                          :       OPINION
                               AND ORDER
TERRANCE L. WILSON,                     :

        Defendant.[1]         :

----------------------------------X

       PITMAN, United States Magistrate Judge:

I.   Introduction

       Plaintiff pro se, Eugene Sidney, a prisoner at Great
Meadow Correctional Facility in Comstock, New York, commenced
this action pursuant to 42 U.S.C. § 1983, alleging that defen-
dant, Corrections Officer Terrance Wilson, used excessive force
against him in violation of the Eighth Amendment.  By notice of
motion dated November 21, 2006, Wilson moves for an order,
pursuant to Rule 56 of the Federal Rules of Civil Procedure,
granting summary judgment and dismissing plaintiff's complaint
(Docket Item 50).

---

    [1]Plaintiff had previously named two other defendants.  By an
order dated June 23, 2005, the Honorable Victor Marrero, United
States District Judge (Docket Item 23), dismissed all claims
against all defendants except Corrections Officer Terrance
Wilson.

The parties consented to refer this case to me for all purposes pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Wilson's motion for summary judgment is denied.

II. Facts

A. Background

Between April 1998 and February 2003, Sidney was incarcerated at Sing Sing Correctional Facility ("Sing Sing") (Plaintiff's Rule 56.1 Statement ("Plf. 56.1") at ¶ 6; Defendant's Rule 56.1 Statement ("Def. 56.1") at ¶ 6). On Tuesday, November 30, 1999, at approximately seven fifty-five in the morning, Sidney was escorted from his cell block, which was located in housing block five, to the Sing Sing medical facility to receive medication (Deposition Transcript of Eugene Sidney, taken on May 17, 2006 ("Plf. Dep.") at 44-46, annexed as Exhibit P to Declaration of Doris Rios Duffy, Esq., dated Sept. 13, 2007 ("Duffy Decl.")). Upon returning to housing block five, Sidney noticed that his breakfast had already been served on a tray and placed in a rack located near the steps Sidney used to enter the housing block (Plf. Dep. at 58-61). Sidney ate his breakfast while still standing because he was eager to participate in a law library "school run"[2] he had scheduled for that morning (Plf.

_____

[2]At Sing Sing, there are two "school runs" (morning and
(continued...)

2

Dep. at 62; Inmate Call Out Slip, dated Nov. 30, 1999, annexed as Exhibit N to Plaintiff's Opposition Letter, dated July 26, 2007).

Upon finishing his breakfast, Sidney asked Corrections Officer Robert Burton whether he could go on the morning school run. Sidney alleges that Burton told him he could not participate in the school run and gave no reason for the decision (Plf. Dep. at 63-64). According to Sidney, Burton then ordered Sidney to the opposite side of the gallery and Sidney complied, (Plf. Dep. at 67), as the morning school run proceeded to leave (Plf. Dep. at 63-64). Wilson alleges he walked up to Sidney, ordering him to lock into his cell, but Sidney refused (Def. 56.1 at ¶ 9). Sidney admits he did not want to go along with this order and did not lock-in (Plf. Dep. at 102).

At this point, the parties' accounts diverge. Wilson alleges that as a result of Sidney's failing to comply with the first order to lock-in, he ordered Sidney to submit to a pat frisk (Def. 56.1 at ¶ 11). Sidney denies that Wilson gave him this order (Plf. 56.1 at ¶ 11; Plf. Dep. at 94-95). According to Wilson, Sidney then assumed a "fighting stance" by raising his clenched fists, prompting Wilson to grab Sidney's arms and sweep

_____

(...continued)
afternoon) per weekday during which inmates are escorted by corrections staff to various locations at Sing Sing for educational or vocational purposes (Plaintiff's Answer to Defendant's First Set of Written Interrogatories, dated July 24, 2006 ("Plf. Ans.") at 12, annexed as Exhibit T to Duffy Decl.).

3

his legs, causing both Sidney and Wilson to fall to the floor
(Def. 56.1 at ¶¶ 12-13). Sidney denies ever raising his fists or
making any other threatening gesture toward Wilson (Plf. 56.1 at
¶ 12; Plf. Dep. at 95). Instead, Sidney alleges that Wilson
backed him against the wall, grabbed his arms, and threw him to
the ground (Plf. 56.1 at ¶ 13; Plf. Dep. at 71-72).

The parties also dispute what occurred while Sidney was
on the floor. Wilson claims that he ordered Sidney to place his
hands behind his back so that he could be handcuffed (Def. 56.1
at ¶ 14). Sidney denies Wilson gave him this order (Plf. 56.1 at
¶ 14; Plf. Dep. at 91). Wilson asserts that Sidney struggled
with Wilson and Burton, preventing them from easily handcuffing
him (Plf. 56.1 at ¶ 15). Sidney disputes this contention and
claims that he landed in a ball after being thrown to the ground
and that Wilson repeatedly kicked him in the ribs and then used
his knee to pin Sidney's head to the floor (Plf. Dep. at 80-81,
86). Sidney contends that the pain from having his face pinned
to the floor caused him to scream and allowed Wilson and Burton
to eventually handcuffed him (Plf. 81-82, 91).

After the struggle, Wilson and Burton took Sidney to
the Sing Sing medical facility where he was examined for injuries
(Plf. Dep. at 91). The health record indicates that Sidney
sustained a "scratch to [his] center upper brow," had a "bruised
area to [his left] eyebrow ridge" with "obvious swelling and

redness," complained of "pain to [his left] rib cage," and was given ice to apply to his swollen eye (Ambulatory Health Record, dated Nov. 30, 1999 ("Hlth. Rec.") at 1, annexed as Exhibit J to Declaration of Rocco G. Avallone, Esq., dated Nov. 16, 2006 ("Avallone Decl.")).

B.  Defendant's Arguments[3]

Defendant argues that (1) there are no issues of material fact as to Sidney's excessive force claim and (2), in any event, defendant is entitled to qualified immunity.  I shall address each argument in turn.

---

[3]In support of his opposition to defendant's summary judgment motion, Sidney has submitted the affidavit of Anthony DeVivo sworn to by DeVivo on September 28, 2004 (see Affidavit of Anthony DeVivo, dated Sept. 28, 2004 ("DeVivo Affidavit"), annexed as Exhibit L to Plaintiff's Opposition Letter, dated June, 29, 2007).  DeVivo was an inmate at Sing Sing at the time of the events alleged in the complaint and his affidavit generally corroborates Sidney's version of the events (see DeVivo Affidavit at 1-3).  In his reply brief, defendant argues that the affidavit should not be considered in connection with Sidney's opposition because it was not produced during discovery (Defendant's Reply Memorandum in Support of Motion for Summary Judgment, dated Sept. 13, 2007 ("Def. Reply") at 5-9).

Because I find that the record establishes the existence of genuine issues of fact even without considering DeVivo's affidavit, I do not reach defendant's preclusion argument.

III. <u>Analysis</u>

   A.   <u>Summary Judgment</u>[4]

      The standards applicable to a motion for summary
judgment are well-settled and require only brief review.

      Summary judgment shall be granted when there is no
      genuine issue of material fact and the moving party is
      entitled to judgment as a matter of law.  Fed.R.Civ.P.
      56(c).  This form of relief is appropriate when, after
      discovery, the party -- here plaintiff -- against whom
      summary judgment is sought, has not shown that evidence

_____

      [4]As an initial matter, Wilson argues that Sidney fails to
comply with Local Rule 56.1 by not clearly stating which material
facts he contends are at issue (Def. Reply at 9-10).  Wilson
seems to argue that Sidney's failure to serve a statement
pursuant to Local Civil Rule 56.1 denominated as such requires
that I deem the contentions in defendant's statement to be
admitted.  This argument is without merit.  First, although his
responses are not concise, Sidney does respond to each of
Wilson's numbered paragraphs, admitting or denying each one in
whole or in part.  Second, Wilson does not point to which
material facts he believes should be deemed admitted.  Third,
even if he had, the record readily reveals which material facts
are controverted.  <u>See</u> <u>Allen v. City of New York</u>, 480 F. Supp.2d
689, 703-04 (S.D.N.Y. 2007)(rejecting argument that court should
deem admitted all facts set forth in movant's 56.1 statement
where non-movant was proceeding <u>pro se</u> and where material facts
at issue were clear from the record); <u>see also</u> <u>Holtz v.</u>
<u>Rockefeller & Co.</u>, 258 F.3d 62, 74 (2d Cir. 2001)(court "has
broad discretion to determine whether to overlook a party's
failure to comply with local rules")(citations omitted).  Lastly,
the Second Circuit has held that even where a non-movant does not
oppose a summary judgment motion, a court cannot grant the motion
on default unless the movant shows it is entitled to summary
judgment as a matter of law.  <u>Vt. Teddy Bear Co. v. 1-800</u>
<u>Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004); <u>see also</u>
<u>Giannullo v. City of New York</u>, 322 F.3d 139, 140-41 (2d Cir.
2003).  Thus, even if Sidney had not submitted a Rule 56.1
statement, defendant's 56.1 statement alone could not justify a
grant of its summary judgment motion unless defendant offered
evidence establishing that no genuine issue of fact existed.

of an essential element of her case -- one on which she has the burden of proof -- exists. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This form of remedy is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact. An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment. <u>See</u> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990). Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial." <u>Aslanidis v. United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993). If the nonmovant fails to meet this burden, summary judgment will be granted against it.

<u>Powell v. Nat'l Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir. 2004); <u>accord</u> <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 553-54 (2d Cir. 2005); <u>Gallo v. Prudential Residential Servs., Ltd.</u>, 22 F.3d 1219, 1223-24 (2d Cir. 1994). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. . . . In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Stated more succinctly, '[t]he evidence of the non-movant is to be believed.'" <u>Lucente v. Int'l Bus. Machs. Corp.</u>, 310 F.3d 243, 253-54 (2d Cir. 2002)(citations

7

omitted); accord Jeffreys v. City of New York, supra, 426 F.3d at
553 ("Assessments of credibility and choices between conflicting
versions of the events are matters for the jury, not for the
court on summary judgment.")(internal quotation marks omitted);
see also Make the Road by Walking, Inc. v. Turner, 378 F.3d 133,
142 (2d Cir. 2004); Dallas Aerospace, Inc. v. CIS Air Corp., 352
F.3d 775, 780 (2d Cir. 2003).

　　　　"Material facts are those which 'might affect the
outcome of the suit under the governing law,' and a dispute is
'genuine' if 'the evidence is such that a reasonable jury could
return a verdict for the nonmoving party.'"  Coppola v. Bear
Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007); accord McCarthy
v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007).
"'[I]n ruling on a motion for summary judgment, a judge must ask
himself not whether he thinks the evidence unmistakably favors
one side or the other but whether a fair-minded jury could return
a verdict for the [non-movant] on the evidence presented[.]'"
Cine SK8, Inc. v. Town of Henrietta, 06 Civ. 1718, --- F.3d ---,
2007 WL 3286903 at *9 (2d Cir. Nov. 8, 2007), quoting Readco,
Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996);
accord Higazy v. Templeton, 05 Civ. 4148, --- F.3d ---, 2007 WL
3024811 at *6 (2d Cir. Oct. 19, 2007).

　　　　In the summary judgment context, where, as here, a
party is proceeding pro se, "the submissions of a pro se litigant

must be construed liberally and interpreted 'to raise the strongest arguments they suggest.'" <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006), <u>quoting</u> <u>Pabon v. Wright</u>, 459 F.3d 241, 248 (2d Cir. 2006); <u>see also</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996); <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994).

      B.    Standards for Section
             1983 Claim of Excessive
             <u>Force under Eighth Amendment</u>[5]

Section 1983 imposes liability on individuals who, while acting under the color of state law, deprive another person of "any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; <u>see</u> <u>Graham v. Henderson</u>, <u>supra</u>, 89 F.3d at 79; <u>Johnson v. Bendheim</u>, 00 Civ. 720 (JSR), 2001 WL 799569 at *5 (S.D.N.Y. July 13, 2001).

The Eighth Amendment prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, including the "unnecessary and wanton infliction of pain." <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976). To establish a violation of the Eighth Amendment

---

[5]Citing <u>Graham v. Conner</u>, 490 U.S. 386 (1989), defendant argues that plaintiff's excessive force claim must be analyzed under the Fourth Amendment (Memorandum Law in Support of Defendant Terrance Wilson's Motion for Summary Judgment, dated Nov. 17, 2006 ("Def. Mem.") at 5-7). Defendant is mistaken since the Fourth Amendment applies to excessive force claims arising out of arrests. <u>Graham v. Conner</u>, <u>supra</u>, 490 U.S. at 394-95.

based on a claim of excessive force, a prisoner must satisfy "(1) a subjective component which focuses on the defendant's motive for his conduct; and (2) an objective component which focuses on the conduct's effect." Jeanty v. County of Orange, 379 F. Supp.2d 533, 540 (S.D.N.Y. 2005), citing Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).

The subjective component of the claim requires plaintiff to show that the defendant "had a 'wanton' state of mind when [he was] engaging in the alleged misconduct." Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999), quoting Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir. 1994). In an excessive force case, "whether conduct was wanton turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Sims v. Artuz, supra, 230 F.3d at 21, quoting Hudson v. McMillian, 503 U.S. 1, 7-8 (1992). In making this assessment, courts focus on four factors: (1) the need for the application of force, (2) the threat reasonably perceived by the responsible officials, (3) the relationship between the need and the amount of force used, and (4) any efforts made to temper the severity of a forceful response. Hudson v. McMillian, supra, 503 U.S. at 7; Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003); Jeanty v. County of Orange, supra, 379 F. Supp.2d at 540. The absence of serious injury is relevant to but not dispositive of this inquiry.

Hudson v. McMillian, supra, 503 U.S. at 7; Allen v. City of New York, supra, 480 F. Supp.2d at 705.

The objective component of the claim requires plaintiff to show that the force applied was "sufficiently serious by objective standards." Griffen v. Crippen, supra, 193 F.3d at 91 (internal quotation marks omitted). "'The objective component . . . is . . . contextual and responsive to 'contemporary standards of decency. . . . When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.'" Jeanty v. County of Orange, supra, 379 F. Supp.2d at 540, quoting Hudson v. McMillian, supra, 503 U.S. at 8-9. While "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights[,]" Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), and "de minimus use[s] of force will rarely suffice to state a constitutional claim[,]" Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)(citation omitted), a plaintiff "need not prove 'significant injury' to make out an excessive force claim, and, thus, the fact that he suffered only minor injuries does not warrant dismissal." Griffen v. Crippen, supra, 193 F.3d at 92.

C.    Application of
      Legal Standards to
      Sidney's Section 1983 Claim

      1.    Subjective Component

Wilson argues that he applied force in a good-faith

effort to subdue Sidney and restore order (Def. Reply at 14).

Sidney claims that the circumstances did not warrant the

application of force (Plaintiff's Memorandum of Law in Opposition

to Defendant's Motion for Summary Judgment, dated Aug. 28, 2007

at 7-8).  Balancing the four factors set forth in Hudson, I find

that the evidence in the record raises genuine issues of fact as

to whether Wilson acted with malice when using force against

Sidney.

First, there is conflicting evidence as to the need for

force.  Wilson claims that Sidney (1) disobeyed a direct order to

return to his cell, (2) disobeyed a direct order to submit to a

pat frisk, and (3) made threatening gestures toward him (Inmate

Misbehavior Report, dated Nov. 30, 1999 ("Inmate Rpt.") annexed

as Exhibit G to Avallone Decl.).  To support his position, Wilson

points to an "Inmate Misbehavior Report," in which he states that

"[Sidney] was given a Direct Order to return to his cell and

lock-in.  He refused to comply. . .  He was then given a Direct

Order [by me] to . . . submit to a pat frisk.  He again refused

the Direct Order [and] instead raised his clenched fists and took

a fighting stance" (Inmate Rpt.).  At his deposition, Sidney
stated he did not want to go along with the first order (Plf.
Dep. at 102) but denied being given the second order or
physically threatening Wilson:

> Q.  Prior to being handcuffed, were you ever given an
>     order to submit to a pat frisk?
>
> A.  No, not at all.
>
> Q.  Did you at any time ever raise your hands and make
>     a fist?
>
> A.  No.
>
> Q.  Go into a fighting stance?
>
> A.  No, not at all.

(Plf. Dep. at 94-95).  In his answers to defendant's
interrogatories, Sidney again denied being ordered to submit to a
pat frisk (Plf. Ans. at 9, 22).  Sidney maintains he posed no
threat to Wilson and that Wilson's application of force against
him was unprovoked (Plf. Ans. at 22).  Thus, the evidence
establishes a genuine issue of fact concerning the need for force
since Wilson's rationale for using force turns on Sidney's
refusal to obey his direct order to submit to a pat frisk and his
taking a "fighting stance."  See Martinez v. Rosado, 614 F.2d
829, 831 (2d Cir. 1980)(denying summary judgment in excessive
force case even though inmate plaintiff admitted refusing a
direct order; court could not "conclude that [this] violation[]
alone would justify a physical assault [by the officer] absent

some evidence of physical resistance or some other indication
that the degree of force utilized by the officer was proper under
the circumstances."); Ali v. Szabo, 81 F. Supp.2d 447, 457
(S.D.N.Y. 2000).

Second, the evidence also raises issues of fact with
regard to the threat Wilson reasonably perceived.  Wilson claims
that Sidney "took a fighting stance raising his clenched
fists[,]" which prompted Wilson to apply force to subdue Sidney
(Memorandum from Corrections Officer Terrance Wilson to Sgt. R.
Murphy, dated Nov. 30, 1999, annexed as Exhibit L to Avallone
Decl.).  As noted above, Sidney denies that he raised his fists
toward Wilson.  Moreover, Sidney argues that he posed no threat
of imminent danger because he and Wilson were merely involved in
a verbal exchange over why Sidney was not allowed to go on the
law library "school run" (Plf. Dep. at 67-69).  Viewing the
evidence in the light most favorable to Sidney, Sidney's denial
undercuts Wilson's argument because the reasonableness of
Wilson's assessment of the situation depends on the threat Sidney
posed.  Thus, as with the first factor, the evidence concerning
the reasonableness of Wilson's assessment is conflicting, raising
an issue of material fact that cannot be resolved on a summary
judgment motion.  Cf. Kalwasinski v. Artuz, 02 Civ. 2582 (LBS),
2003 WL 22973420 at *4-*5 (S.D.N.Y. Dec. 18, 2003)(finding no
issue of material fact as to need for force and reasonableness of

threat on summary judgment motion where there was no issue that plaintiff attacked prison guard in a room with about forty other prisoners present).

Third, the evidence raises issues of material fact with regard to the relationship between the need and amount of force used. Wilson argues that he used only that amount of force needed to make Sidney comply (Def. Reply at 14). In support, Wilson offers the written statement of the area supervisor who concluded that "all force appears to be justified and not excessive" (Memorandum from Sgt. R. Murphy to Lieutenant K. Goewey, dated Nov. 30, 1999, annexed as Exhibit K to Avallone Decl.). However, Wilson does not explain Sidney's claim that the use of force was not justified in the first place. According to Sidney, the amount of force used by Wilson -- which included throwing Sidney to the ground, pinning Sidney's head to the floor by pressing his knee to the side of Sidney's face, and kicking Sidney in the ribs -- was not necessary because Sidney never physically threatened Wilson (Plf. Dep. at 72-95). Because there is a material dispute as to whether the force was needed, there is an issue of fact as to whether the force allegedly used by Wilson reasonably relates to the need for force. See Ali v. Szabo, supra, 81 F. Supp.2d at 458; Smith v. Marcellus, 917 F. Supp. 168, 174 (W.D.N.Y. 1995)("Whether the proof will establish that this type and amount of force reasonably correlates to the

need for the application of force, and the weight to be accorded this factor . . . are issues best left for the trier of fact.").

Fourth, there is also conflicting evidence concerning whether Wilson attempted to use alternate means to resolve the situation before resorting to physical force. The only alternative means used by Wilson reflected in the record are his alleged direct orders to Sidney to lock-in and submit to a pat frisk. As noted above, however, Sidney disputes whether Wilson ever gave him the second order.

If it were to credit Sidney's version of the facts as set out above, a jury could reasonably infer that Wilson acted maliciously. See Allen v. City of New York, supra, 480 F. Supp.2d at 707-08 ("If [plaintiff's] account of events is believed, then a jury could reasonably infer that [defendant] acted maliciously, regardless of whether [plaintiff] had initially failed to comply with a direct order."). Sidney has put forth enough evidence, with regard to the subjective component of his claim, to satisfy his limited burden of production on the motion. See Nunez v. Goord, 172 F. Supp.2d 417, 433 (S.D.N.Y. 2001)("Although the evidence is thin, there are genuine issues of material fact concerning whether any use of force by [defendants] on the dates in question was reasonably related to, and adequate to address, legitimate security or safety concerns, or instead was excessive, or whether it was

inflicted maliciously or in good faith.").  The conflicting
evidence in the record concerning whether Wilson used force in a
good-faith effort to maintain order or maliciously to cause
Sidney harm raises genuine issues of fact that cannot be resolved
on a motion for summary judgment.

  2.  Objective Component

  Wilson next argues that Sidney's injuries do not rise
to a constitutional level because the use of force was de minimus
(Def. Reply at 13).  However, the amount of evidence necessary to
give rise to an issue of fact concerning the amount of force used
is minimal.  Allen v. City of New York, supra, 480 F. Supp.2d at
708; Espinal v. Goord, 00 Civ. 2242 (AJP), 2001 WL 476070 at *13
n.46 (S.D.N.Y. May 8, 2001).  I find that plaintiff has met this
minimal burden and conclude that summary judgment should also be
denied with respect to the objective element of plaintiff's
claim.

  Sidney testified that Wilson threw him to the ground,
pinned his head against the floor with his (Wilson's) knee, and
repeatedly kicked Sidney in the ribs (Plf. Dep. at 72-75, 83-89).
Sidney repeated these allegations in his answers to defendant's
interrogatories:  "All of a sudden, I was grabbed, thrown to the
other side of the gallery, and land[ed] in a ball. . . .  I was
kicked, kneed in the head by C.O. T. Wilson, and punched.  While

C.O. T. Wilson was kneeing me in the head sideways, I began screaming and hollering from the pressure" (Plf. Ans. at 9-10). Similar uses of force have routinely been found to give rise to an issue of fact as to the objective element of an excessive force claim. E.g., Allen v. City of New York, supra, 480 F. Supp.2d at 707 (denying summary judgment where corrections officer allegedly banged handcuffed inmate's head against a wall); Atkins v. County of Orange, 372 F. Supp.2d 377, 399-401 (S.D.N.Y. 2005)(finding issue of fact as to objective element where corrections officer allegedly slammed plaintiff's body and head into a wall).

In addition, Wilson argues that because Sidney sustained only minor injuries it necessarily follows that he applied only a de minimus amount of force to restrain Sidney. To support this argument, Wilson points to the ambulatory health record that states Sidney sustained a "scratch to [his] center upper brow," a "bruised area to [his left] eyebrow ridge" with "obvious swelling and redness," complained of "pain to [his] rib cage," and was given ice to apply to his swollen eye (Hlth. Rec. at 1). Defendant's argument is flawed. While these observations suggest Sidney did not sustain profound injuries, the Second Circuit has cautioned against giving the conclusions in such health records conclusive weight on a motion for summary judgment where there is other evidence in the record detailing plaintiff's

injuries. Scott v. Coughlin, supra, 344 F.3d at 290 ("[S]ummary judgment was inappropriately granted on the basis of [plaintiff's] ambulatory health record."); see Messina v. Mezzeo, 854 F. Supp. 116, 133 (E.D.N.Y. 1994)("[E]ven if accepted as accurate and unbiased, the [medical] records which indicate no serious injury could not alone support a motion for summary judgment[.]").

Here, as in Scott, the ambulatory health records are not determinative of the objective element of plaintiff's claim. First, Sidney has put forth evidence that raises issues of fact concerning Wilson's application of force. See Scott v. Coughlin, supra, 344 F.3d at 291 (noting that "extent of injury must be considered in context" for purposes of summary judgment). Second, Sidney's injuries are of the same magnitude as injuries sustained by plaintiffs in cases where courts have denied summary judgment. See, e.g., Griffin v. Crippen, supra, 193 F.3d at 91 (bruised shin and swelling over left knee); Allen v. City of New York, supra, 480 F. Supp.2d at 698 (swelling, bruising, and redness to head); Brewer v. Jones, 02 Civ. 3570 (NRB), 2003 WL 22126718 at *2 (S.D.N.Y. Sept. 12, 2003)(reddened forehead and pain in jaw); Nunez v. Goord, supra, 172 F. Supp.2d at 433 (bruise to left brow); Smith v. Marcellus, supra, 917 F. Supp. at 171-72 (abrasion under left eye, laceration near right ear, four

superficial scratches on upper calf behind knee, and slightly
swollen right wrist).

Lastly, a genuine issue of material fact exists as to
the objective prong of Sidney's claim because the material facts
relating to Wilson's use of force against Sidney are disputed by
the parties.  See Jeanty v. County of Orange, supra, 379 F.
Supp.2d at 541 ("Courts in this district are hesitant to dismiss
complaints alleging excessive force even at the summary judgment
stage if conflicts exist in the record regarding the degree and
justification of force.")(internal quotation marks omitted);
Smith v. Donahue, 03-CV-325F, 2005 WL 1460173 at *4 (W.D.N.Y.
June 21, 2005)("While plaintiff's injuries, lumbar back pain and
an abrasion on his hand, do not appear to have been serious, the
court finds a question of material fact exists regarding the
circumstances under which Plaintiff sustained these injuries.").

Sidney has met his limited burden of production on both
components of his excessive force claim by providing enough
evidence to raise genuine issues of material fact.  Accordingly,
Wilson's summary judgment motion seeking dismissal of Sidney's
excessive force claim on the ground that no genuine issues of
material fact exist is denied.

D.   Qualified Immunity

Wilson also argues that he is entitled to summary judgment on Sidney's excessive force claim based on the doctrine of qualified immunity (Def. Mem. at 8-11).

A governmental agent who performs a discretionary function may be entitled to qualified immunity from suit for constitutional violations. As the Second Circuit explained in Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004):

> The doctrine of qualified immunity protects state officials from civil liability for actions performed in the course of their duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal citation and quotation marks omitted). The doctrine protects officials who "act in ways they reasonably believe to be lawful." Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Hence, a defendant is not liable if he did not violate clearly established law or it was objectively reasonable for him to believe that he was not violating clearly established law. Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003); Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001).
>
> As this Court has held, "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" Anderson v. Recore, 317 F.3d at 197 (quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998)). The question is "what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999); see Anderson v. Creighton, 483 U.S. at 640, 107 S.Ct. 3034 ("[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be

sufficiently clear that a reasonable official would
understand that what he is doing violates that
right.").  Hence, even assuming a state official
violates a plaintiff's constitutional rights, the
official is protected nonetheless if he objectively and
reasonably believed that he was acting lawfully.  See
Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116
L.Ed.2d 589 (1991) ("The qualified immunity standard
'gives ample room for mistaken judgments' by protecting
'all but the plainly incompetent or those who knowingly
violate the law.'") (quoting Malley v. Briggs, 475 U.S.
335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

See Holcomb v. Lykens, 337 F.3d 217, 220 (2d Cir. 2003); Anderson

v. Recore, 317 F.3d 194, 197 (2d Cir. 2003); see also Anderson v.

Creighton, 483 U.S. 635, 638-39 (1987); Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982); McCullough v. Wyandanch Union Free Sch.

Dist., 187 F.3d 272, 278 (2d Cir. 1999); Connell v. Signoracci,

153 F.3d 74, 80 (2d Cir. 1998); Brown v. City of Oneonta, 106

F.3d 1125, 1130-31 (2d Cir. 1997), overruled on other grounds,

Gonzaga Univ. v. Doe, 536 U.S. 273 (2002).

A three-part analysis is used to assess the validity of

an assertion of qualified immunity:

A government official is entitled to qualified immunity
from suit for actions taken as a government official if
(1) the conduct attributed to the official is not
prohibited by federal law, constitutional or otherwise;
(2) the plaintiff's right not to be subjected to such
conduct by the official was not clearly established at
the time of the conduct; or (3) the official's action
was objectively legally reasonable in light of the
legal rules that were clearly established at the time
it was taken.

Cuoco v. Moritsugu, 222 F.3d 99, 109 (2d Cir. 2000); accord Moore

v. Andreno, 06 Civ. 3623 (L), 06 Civ 3748 (XAP), --- F.3d ---,

2007 WL 3052216 at *4 (2d Cir. Oct. 22, 2007); Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007).  "If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court."  Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).  If the historical facts are in dispute, they must be resolved by the fact finder.  Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004); Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994).

A prison inmate's right to be free from excessive force by prison officials was a clearly established constitutional right at the time of the altercation alleged in the complaint. Hudson v. McMillian, supra, 503 U.S. at 4-7; see also McCrory v. Belden, 01 Civ. 0525 (MHD), 2003 WL 22271192 at *7 (S.D.N.Y. Sept. 30, 2003)("[T]here is no question that . . . the right of inmates to be free from excessive force by their jailers [i]s well-established.").

Wilson argues, however, that his actions were objectively reasonable given the threat that Sidney allegedly posed (Def. Mem. at 10-11).  Where a right is clearly established, a government official is still entitled to qualified immunity if "it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001)(internal

23

quotation marks and citation omitted). However, dismissal based on qualified immunity is not appropriate where "there are facts in dispute that are material to a determination of reasonableness." Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999).

Wilson grounds his assertion of immunity on his allegations that Sidney disobeyed a direct order to submit to a pat frisk and physically threatened him. As detailed above, Sidney has proffered evidence that directly controverts both of these claims. Thus, Wilson is not entitled to summary judgement on his defense of qualified immunity because there are issues of material fact regarding the degree of force Wilson applied against Sidney and the whether such force was justifiable, or even arguably justifiable, under the circumstances. See Jeanty v. County of Orange, supra, 379 F. Supp.2d at 542 ("In the case at bar, the same genuine issues of material fact that preclude summary judgment on plaintiff's excessive force claim, also preclude application of the defense of qualified immunity at the summary judgment stage."); Ali v. Szabo, supra, 81 F. Supp.2d at 461 ("The Court cannot conclude as a matter of law that [officers'] conduct was objectively reasonable since there are material issues of fact as to whether [plaintiff] was obeying the officers' order and who started the physical confrontation.").

## IV. Conclusion

For all the foregoing reasons, defendant's motion for summary judgment (Docket Item 50) is denied in its entirety.

Defendant's application to re-open discovery for the limited purpose of deposing Anthony DeVivo is granted; defendant is granted until December 20, 2007 to conduct DeVivo's deposition. Defendant's further request for leave to make a renewed summary judgment motion is denied. As noted above, I have not considered DeVivo's Affidavit in resolving this motion. Thus, it is virtually impossible that his deposition testimony could warrant the granting of summary judgment.

Dated: New York, New York
       November 20, 2007

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Mr. Eugene Sidney
DIN 94-A-0600
Great Meadow Correctional Facility
P.O. Box 51
Comstock, New York  12821

Linda M. Cronin, Esq.
Rocco G. Avallone
Cronin & Byczek, LLP
1981 Marcus Avenue, Suite 227
Lake Success, New York  10016